UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY TURN,<br><br>            Plaintiff,<br><br>   v.<br><br>RETIREMENT BENEFIT PLAN OF AMERICAN AIRLINES, INC. FOR FLIGHT ATTENDANTS,<br><br>            Defendant. | C11-468 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiff's motion for summary judgment, docket no. 29, and Defendant's cross-motion for summary judgment, docket no. 31. Having reviewed all papers filed in support of and in opposition to each motion, the Court enters the following Order:

Plaintiff's motion for summary judgment is DENIED. Defendant's cross-motion for summary judgment is GRANTED.

**I.     Background**

The relevant facts of this case are not in dispute. As an employee of American Airlines (hereinafter "American"), Plaintiff Ms. Turn is eligible for benefits under the

ORDER - 1

Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants (hereinafter "the Plan"). Ms. Turn worked as a flight attendant for American from July 1, 1987, to December 6, 2007. From December 6, 2007, to December 7, 2010, Ms. Turn undertook a lengthy leave of absence due to a medical disability. While on this unpaid leave of absence, in February 2009, Ms. Turn bid for and was awarded 36.10 hours of vacation time, for which she was duly paid. This process is grounded by the terms of the collective bargaining agreement between American and the Association of Professional Flight Attendants, Ms. Turn's union. Ms. Turn claims that she is entitled to have the 36.10 vacation hours treated as "credited service" hours under the Plan.

The 36.10 vacation hours are at the heart of this dispute. At present, under the terms of the Plan, the parties agree that Ms. Turn has earned 14.964 years of credited service. If the 36.10 vacation hours are added to Ms. Turn's years of credited service, she would have accrued over 15 years of credited service and thus be eligible to retire at the age of fifty five, rather than at the age of sixty.

On June 29, 2010, the Plan Administrator denied Ms. Turn's request to include the 36.10 vacation hours as credited service. Subsequently, Ms. Turn appealed the Plan Administrator's decision to the Pension Benefits Administration Committee (hereinafter "PBAC"). The PBAC sustained the Plan Administrator's denial to include the 36.10 vacation hours as credited service on September 9, 2010. The PBAC relied on the following provisions of the Plan:

Section 2.20 *Compensation*

means, for any period (other than any period prior to a Five-Year Break):

ORDER - 2

>   (a) For purposes of computing Final Average Compensation, for any Member who was an Eligible Employee and was on active payroll or an Authorized Leave of Absence with reinstatement rights on or after September 12, 2001, the amount of regular/base salary wages, income attributable to overage leaves prior to July 2, 2003 and incentive pay, computed on the basis of a maximum of one thousand twenty (1,020) hours per Plan Year (except that hours for which incentive rates were paid in excess of two hundred sixteen (216) hours shall be credited for this purpose at base rates ) . . . .
>
> and
>
> Section 2.22 *Credited Service*
>
> . . . .
>
>   (f) A Member's Credited Service shall not include any period on Furlough or unpaid leave of absence, provided, however, that Credited Service will include periods of military leaves of absence, overage leaves of absence, and Union Leave (Union Leave is included on or after January 1, 1989). Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, benefits and Credited Service with respect to qualified military service will be provided in accordance with section 414(u) of the Code. Credited Service will not include periods of absence due to overage leaves commencing after July 2, 2003.

In relying on these provisions of the Plan, the PBAC concluded that only pay received for vacation time while on active payroll is considered pensionable compensation, and credited service does not accrue while on an unpaid leave of absence. AR at 2-3 (docket no. 34).

Ms. Turn, on the other hand, argues that the Plan supports her position that the 36.10 vacation hours must be considered pensionable compensation. More specifically, Ms. Turn relies on the following provisions of the Plan:

> Section 2.51 *Hour of Service*
>
>   (a) Hour of Service means each hour for which an Employee or Member is

ORDER - 3

>either directly or indirectly paid or entitled to payment by the Employer for the performance of duties or for reasons (such as vacation, holiday, sickness, incapacity, Furlough, jury duty, military duty, overage leave prior to July 2, 2001, Union Leave (Union Leave is included on and after January 1, 1989), or leave of absence) other than for the performance of duties (irrespective of whether the employment relationship has terminated), and each hour for which back pay, irrespective of mitigation of damages, has been awarded to the Employee or Member or agreed to by the Employer.
>
>. . . .
>
>(h) The Administrator shall resolve any ambiguity with respect to the crediting of Hours of Service in favor of the affected Employee or Member.

In relying on these provisions of the Plan, Ms. Turn argues that, because the Plan paid for the vacation hours, under section 2.51 those hours are considered pensionable compensation. Ms. Turn also argues that section 2.22(f) applies to unpaid leaves of absence, and any dispute or ambiguity should be resolved in her favor under section 2.51(h). <u>See</u> Pl.'s Mot. for Summ. J. at 6-9 (docket no. 29).

## II.     Standard of Review

### A.     Standard for Summary Judgment

The Court may grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, <u>Celotex</u>, 477 U.S. at 323; rather, the moving party is entitled to judgment if the evidence is not

ORDER - 4

sufficient for a jury to return a verdict in favor of the opponent, Anderson, 477 U.S. at 249.  To survive summary judgment, a non-moving party must "show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." Walker v. Shansky, 28 F.3d 666, 670-71 (7th Cir. 1994), aff'd sub nom. Walker v. Ghoudy, 51 F.3d 276 (7th Cir. 1995); see also Celotex, 477 U.S. at 324.  The adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006).

   **B. Applicable Standard of Review in the ERISA Context**

  In reviewing ERISA cases in which benefits were denied, a court must review the denial of benefits *de novo*, unless the plan confers discretion on the administrator. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "But if the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (emphasis in original) (citing Firestone, 489 U.S. at 115).  "[F]or a plan to alter the standard of review from the default of *de novo* to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." Id. (citing Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999)).

In this case, the Plan unambiguously confers discretion to the PBAC to interpret the Plan. For example, section 11.3(c)(iii) of the Plan provides that the PBAC is responsible to "decide questions concerning the application or interpretation of the Plan." AR at 113. This provision unambiguously confers discretion to the administrator. *See*, *e.g.*, *Firestone*, 489 U.S. at 115 (noting that if a plan grants an administrator the right to determine eligibility for benefits or to construe the terms of the plan, it has discretionary authority).

The abuse of discretion standard of review must be informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. *Abatie*, 458 F.3d at 967. When a plan administrator both administers the plan and funds it, an inherent conflict exists. *Id*. "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 968. A conflict weighs more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Id.* (internal citations omitted).

Ms. Turn argues that the Court must adopt a less deferential standard in light of an alleged structural conflict of interest. However, Ms. Turn fails to substantiate this claim by facts supporting such an assertion. Ms. Turn merely makes conclusory allegations

ORDER - 6

that American is both the Plan administrator and the sole funding source of the Plan. However, unless Ms. Turn supports such an assertion with other evidence, such as evidence of malice, self-dealing, or other relevant examples, the standard of review is abuse of discretion. In contrast, the Plan points to provisions in the Plan that provide in relevant part that members of the PBAC serve without compensation for services and have authority to make final decisions without any further supervision or review by American. See AR at 112-113, 121. Thus, the proper standard of review is abuse of discretion.

### III.   Discussion

"In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005) (internal citations omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (internal citations omitted). This Court must uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Id.

ORDER - 7

In *Boyd*, a Retirement Board denied former professional football player Brent Boyd's benefits claim under the Bert Bell/Pete Rozelle National Football League Player Retirement plan. *Id.* at 116. Neutral physicians, including a neurologist and a psychiatrist, among others, determined that Boyd's injuries arose out of league football activities. *Id.* at 1176-1177. The Board sent Boyd to another neurologist, who concluded that the injuries did not result from football activities. *Id.* The Board relying on the one contrary diagnosis denied Boyd benefits. *Id.* The Ninth Circuit affirmed the district court's grant of summary judgment in the Board's favor, reasoning that the cause of Boyd's injury was far from clear. *Id.* at 1179. In *Boyd*, the evidence could reasonably be interpreted to conclude that Boyd's disability either was or was not linked to his football career, and "a mere tally of experts is insufficient to demonstrate that an ERISA fiduciary has abused its discretion." *Id.*

In this case, the PBAC's reliance on section 2.22(f) of the Plan to deny inclusion of the disputed 36.10 vacation hours as credited service is reasonable. Ms. Turn's reliance on section 2.22(f) is misplaced. Section 2.22(f) expressly excludes unpaid leaves of absence. AR at 42. While the 36.10 vacation hours that Ms. Turn cashed out were paid, the PBAC's interpretation that credited service is not earned during an unpaid leave of absence, including vacation pay paid to inactive employees on an unpaid leave of absence, is reasonable. Here, Ms. Turn was admittedly inactive and on an unpaid leave of absence. AR at 6-8. Further support for the PBAC's interpretation is found in the definitions section 2.20(a) which, for matters of computing final average compensation, provides that payments made to employees should be based on "regular/base salary or

ORDER - 8

wages." AR at 35. While the definition of compensation is not directly related to credited service, the PBAC's reliance on section 2.20(a) is reasonable given its consistent interpretation that payments made to employees be regular/base wages under the Plan to receive credited service. <u>See</u> Hammond Decl., Ex. B, PBAC 2007 decision (docket no. 32); Ex. C, PBAC 2006 decision (docket no. 32).[1]

The PBAC did not consider section 2.51(a), entitled "Hour of Service," which includes each hour for which an Employee or Member is either directly or indirectly paid . . . for . . . vacation. AR at 49. Section 2.51(a), however, is inapplicable because section 2.22(f) expressly precludes periods of unpaid leaves of absence as credited service, which was the matter in dispute between Ms. Turn and the PBAC. Similarly, section 2.51(h), which requires resolution of ambiguity in favor of a member or employee with respect to "Hour of Service," AR at 52, is also inapplicable because there is no ambiguity when section 2.22(f) unambiguously precludes periods of unpaid leaves of absence as credited service.

Even if there are conflicting provisions in the Plan, the PBAC's interpretation must be given deference if it fails to address such arguably conflicting provisions given the PBAC's reasonable reliance on the express language of section 2.22(f) that addresses the issue in dispute, namely "credited service."

---

[1] The Hammond Decl. contains a typographical error, where the PBAC 2007 and PBAC 2006 decisions are mislabeled as Exs. A and B, respectively.

ORDER - 9

IV.     Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment, docket no. 29, and GRANTS Defendant's cross-motion for summary judgment, docket no. 31.  The Court concludes that the PBAC did not abuse its discretion in refusing to include the disputed 36.10 vacation hours as credited service.[2]  The Clerk is directed to dismiss this case with prejudice and with costs.

IT IS SO ORDERED.

Dated this 26th day of September, 2012.

*Thomas S. Zilly*
THOMAS S. ZILLY
United States District Judge

---

[2] While the Court agrees that interpretation of ERISA regulation C.F.R. §2530.200(b)-2(a)(2)(ii) is a question of law that the Court decides *de novo*, C.F.R. §2530.200(b)-2(a)(2)(ii) is inapplicable here. First, C.F.R. §2530.200(b)-2(a)(2)(ii) applies to what constitutes an hour of service; here, at issue is what period constitutes credited service.  Second, the regulation by its language, "on account of a period of time during which no duties are performed" presumes an active employee.  Here, Ms. Turn was not an active employee.  Finally, *Hope v. Int'l Bhd. Of Electrical Workers*, 435 F.3d 1121, 1124 (9th Cir. 2005), and *Mora v. Construction Laborers Pension Trust for Southern CA*, 785 F.2d 826, 827 (9th Cir. 1985), are neither on point nor do they interpret C.F.R. §2530.200(b)-2(a)(2)(ii) contrary to this Court's interpretation.  Both cases addressed issues related to double crediting of vacation hours, which is not at issue in this case.